UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Andre Hickson,
      Plaintiffs

vs

United Parcel Service,
      Defendants

Case No. C-1-04-411
(Spiegel, J.)
(Hogan, M.J.)

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 38), Plaintiff's Response to Defendant's motion (Doc. 52), and Defendant's Reply thereto (Doc. 53).

### BACKGROUND

Plaintiff brings this action, pro se, alleging breach of the collective bargaining agreement ("CBA") between the Teamsters Local 100 and UPS in violation of § 301 of the Labor Management Relations Act ("LMRA"), and alleging racial discrimination in violation of state and federal law.

Plaintiff was hired by Defendant on July 13, 1995, as a part-time car washer at the Sharonville facility. (Deposition of Andre Hickson at 16). In August, 1999, Plaintiff successfully bid on a part-time air driver position. In March, 2002, Plaintiff successfully bid on a sorter/car wash position created under Section 22.3 of the NMA, under which Defendant creates full-time positions by combining part-time positions. (Doc. 38, Attachment 1, at 61-62). In this position, Plaintiff was required to work as directed, but generally performed sorter duties during the first half of his shift and car wash duties during the second half of his shift. (Plaintiff Dep. at 32). Plaintiff remained in this job from March, 2002, until September 4, 2002 when he was terminated. (Id.). In 2001, prior to his termination, Plaintiff received two suspensions for dishonesty and making late deliveries. (Id. at 32-33;

34, 36-37)[1]. He also received two written warnings in 2001 for entering inaccurate information into Company records and for unacceptable attendance. (Plaintiff Dep. at Ex. 2). On July 2002, Plaintiff was again discharged for dishonesty. (Id., Ex. 2). This discharge was later reduced to a six-day unpaid suspension. (Plaintiff Dep. at 39-40).

Plaintiff's final termination occurred on September 3, 2002, while he was working the car wash portion of his job. Plaintiff began work at 4:00 pm that day on the sorting portion of his job. Although Plaintiff was normally scheduled for four and one-half hours, on that day, he worked on the sorting shift for six hours. (Plaintiff Dep. at 54). Because of this, Plaintiff did not start the car washing portion of his job until 10:24 pm. Therefore, in order to complete this portion of his job, Plaintiff would either need to finish one and one-half hour earlier than usual or work one and one-half hours of overtime. Plaintiff spoke with Adam Minnick, his immediate car wash supervisor, before starting the car wash portion of his job. Plaintiff asked Minnick if he could leave at the end of his eight hour shift. (Plaintiff Dep. at 54). Plaintiff testified that he needed to leave early because he had an appointment the following morning. (Id. at 62-63). Plaintiff claims that Minnick gave him no answer. (Id. at 56). However, according to the notarized "write-up" prepared by Minnick during Defendant's investigation of Plaintiff's discharge, Minnick told Plaintiff he would probably need to work overtime since he had worked an extra one and one-half hours on the sorting position of his job. (Plaintiff Dep., Ex. 14). Moreover, Minnick claims that Plaintiff told him he was leaving work at the end of his shift whether he was finished with his assigned work or not. (Id.). Plaintiff alleges that Minnick's past practice was to allow him to leave at the end of his eight-hour shift whenever he requested to do so. (Plaintiff Dep. at 55; Doc. 38, Attachment 2, Affidavit of Pete Dames at ¶5). At approximately 11:25 pm, full-time supervisor Todd Wachter, spoke with Plaintiff and reiterated that Plaintiff would be required to work overtime that evening because the sorting had been completed late. (Plaintiff Dep. at 57-58). Plaintiff testified that he responded that he should be permitted to leave based upon his seniority. (Id. at 59). Wachter warned Plaintiff that clocking out prior to completing his assigned work would be considered job abandonment. (Id.).

At 12:30 a.m., at the end of Plaintiff's eight-hour shift and prior to completing his assigned work, Plaintiff approached the time clock. (Plaintiff Dep. at 63-64, Ex. 14). Plaintiff testified that, although he was aware of the

---

[1] Plaintiff was initially discharged for these violations but was subsequently suspended without pay. (Plaintiff Dep. at 34, 37).

consequences for clocking out, he decided to leave because he believed that a less senior employee should have been required to finish his duties. (Id. at 64). Plaintiff was approached by Minnick, who asked him whether he had completed his assigned work. (Id. at 65-66). When Plaintiff responded that he had not completed his work, Minnick told him he was not permitted to leave. (Id. at 66). Plaintiff stated that a lower seniority employee should be required to finish Plaintiff's work, to which Minnick responded that Plaintiff was not permitted to leave. (Id.). At this point, Plaintiff requested the assistance of the Union Steward, Chad Morris. (Id. at 66-67). After relating his argument to Morris, Plaintiff claims that Morris gave him permission to clock out. (Id.). Plaintiff then clocked out. (Id. at 68).

Plaintiff returned to work the next day and began working. (Plaintiff Dep. at Ex. 7, p. 7). Shortly thereafter, Wachter took Plaintiff and Morris into Center Manager Jim Murray's office where Plaintiff was terminated for failing to follow management instructions, walking off the job and job abandonment. (Id.; Dep. Ex. 14, p 2; Doc. 38, Attachment 2, Dames Affidavit ¶3; Attachment 12, September 2002 Panel Hearing & Exhibits, p.2). Plaintiff claimed that his Union Steward authorized him to leave, to which Murray responded that Morris did not have the authority to give Plaintiff instructions relating to work. (Plaintiff Dep. Ex. 7, p. 8). Plaintiff filed a grievance over the discharge, which was denied by the State Panel on September 16, 2002. (Plaintiff Dep. at 100-102; Plaintiff Dep. Ex. 15). Plaintiff subsequently filed a charge with the NLRB alleging that he was terminated in retaliation for grievance filing activity. (Plaintiff Dep. Ex. 3). On November 25, 2002, the Charge was dismissed due to insufficient evidence. (Plaintiff Dep. Ex. 4). Plaintiff appealed the decision and on January 6, 2003 he was informed that "there was insufficient probative evidence to show that [he] was discharged in retaliation for his union and/or protected or concerted activities, rather than for the business reasons advanced by [UPS] relating to [his] having left work early before [his] overtime work was completed." (Plaintiff Dep. at Ex. 5). Following the denial of Plaintiff's NLRB appeal, Plaintiff filed a charge with the Ohio Civil Rights Commission ("OCRC") alleging, based on the same set of facts as set forth in his NLRB charge, that he was discriminated against on the basis of his race. (Plaintiff Dep. Ex. 6). The OCRC found no probable cause for his charge and denied his request for rehearing. (Plaintiff Dep. Exs. 12, 13).

Plaintiff filed his original Complaint in this action on June 17, 2004 (Doc. 2) and an Amended Complaint on December 10, 2004 (Doc. 24), alleging breach of the collective bargaining agreement ("CBA") between the Teamsters Local 100 and UPS in violation of § 301 of the Labor Management Relations Act ("LMRA"), and alleging racial discrimination in violation of state and federal law.

3

# OPINION

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### Plaintiff's § 301 Claim Should Be Dismissed

Defendant argues that Plaintiff's claims are preempted by §301 of the Labor Management Relations Act ("LMRA"). Citing *Hawaiian Airlines, Inc. v. Norris*, Defendant argues that the resolution of Plaintiff's claims depends on an interpretation of the CBA and therefore, are preempted. 512 U.S. 246, 261 (1994). Moreover, the Sixth Circuit has stated, in the context of the Railway Labor Act, that "if the action is based on the matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and the RLA," then preemption is appropriate. *Stephens v. Norfolk and W.R. Co.,* 792 F.3d 576, 580 (6th Cir. 1986).

Plaintiff's Amended Complaint states specifically that Defendant "breached to contract we are under (National Master United Parcel Service Agreement) by not asking if any one wants 'overtime.'" (Doc. 24). It is Plaintiff's contention that he was entitled to leave work prior to finishing his assigned work because a coworker with less seniority should have been required to finish his assigned work pursuant to Article 3, Section 16 of the Central Region Supplemental Agreement and that his termination violated the CBA. (Doc. 38, Attachment 1, p. 170). As such, Plaintiff argues that his termination for leaving prior to completing his work violated the CBA. Defendant, on the other hand, maintains that this provision applies only to work not assigned to a particular employee. (Id., Attachment 2, Dames Aff. at ¶ 4). We find Plaintiff's breach of contract claim to be without merit for the reasons argued by Defendant: 1) his claim is barred by the applicable statute of limitations; and 2) he has failed to allege that his Union breached its duty of fair representation.

The statute of limitations for a claim alleging breach of the collective bargaining agreement is six months. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-71 (1983); *Schoonover v. Consolidated Freightways Corp.*, 49 F.3d 219, 221-22 (6th Cir. 1995). That statute of limitations begins to run "when an employee discovers, or should have discovered with exercise of due diligence, acts which give rise to the cause of action." *Wilson v. Int'l Bhd. of Teamsters,* 83 F.3d 747, 757 (6th Cir. 1996). "Perhaps most importantly, a party is not required to sue on a hybrid claim until the arbitration panel renders its final decision, or until the party reasonably should know that the union has abandoned the party's claim." *Schoonover*, 49 F.3d at 222. As such, we find that the limitations period for Plaintiff's § 301 claim began to run on September 16, 2002, the date on which Plaintiff learned that the State Panel denied his grievance. *Robinson v. Central Brass Mfg.*, 987 F.2d 1235, 1239 (6th Cir. 1993)(limitations period for a Section 301 suit "must be measured from the date on which the employee knew or should have known of the union's final action or should have known of the employer's final action, whichever occurs later."). Thus, the last date on which Plaintiff could file

5

his § 301 claim was March 16, 2002. Unfortunately, Plaintiff filed his Complaint on June 15, 2004, fifteen months after the limitations period expired. Therefore, Plaintiff's § 301 claim is time barred and should be dismissed.

Additionally, Plaintiff's § 301 claim fails because he has not alleged that his Union breached its duty of fair representation during the grievance process. The Sixth Circuit has stated that

> [I]t is well established that when a collective bargaining agreement establishes a mandatory grievance procedure and grants the union the exclusive right to pursue claims on behalf of an aggrieved employee, as in this case, the results obtained by the union are normally conclusive of the employee's rights under the agreement subject to very limited judicial review. Accordingly, the aggrieved employee normally lacks independent standing to attack the results of the grievance process. An individual employee may, however, challenge the arbitration award where he or she alleges and proves that the union breached its duty of fair representation, thereby subverting the arbitral process.

*Bacashihua v. U.S. Postal Service*, 859 F.2d 402, 404-405 (6th Cir. 1988)(citations omitted). Thus, since Plaintiff has not alleged that the Union breached its duty of fair representation, this Court lacks jurisdiction to review Plaintiff's breach of contract claim.

<u>Plaintiff's Federal and State Law Discrimination Claims Should Be Dismissed</u>

Plaintiff states, in his Amended Complaint, that his discrimination claim is based upon Defendant's failure to respect his seniority in the same way as white employees. (Doc. 24). Plaintiff seems to be arguing two things with respect to the treatment of his seniority: 1) he was denied overtime in favor of less senior employees while white employees were not[2]; and 2) he was forced to work overtime while white workers were not. Both of these arguments stem from Plaintiff's claim that he was entitled to "clock out" prior to finishing his assigned work because a coworker with less seniority should have been required to finish his assigned work.

---

[2] While Plaintiff makes a cursory statement in his memorandum in opposition that his supervisor assigned employees to help him with his assigned work to avoid granting him overtime, Plaintiff does not further develop this claim and, indeed, offers no evidence of such.

Plaintiff's claims are those of disparate treatment. In such a case, plaintiff has the burden of proving unlawful discrimination because of race. Proof of discriminatory intent is crucial. *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 92 (6th Cir. 1982); *Chrisner v. Complete Auto Transit, Inc.*, 645 F.2d 1251, 1257 (6th Cir. 1981). Because of the difficulty of proving discriminatory motive, the Supreme Court has made available a special order of proof in employment discrimination cases, the initial stage of which is described as plaintiff's prima facie case. *Texas Depart. of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Askin v. Firestone Tire & Rubber Co.*, 600 F. Supp. 751, 753-54 (E.D. Ky. 1985), *aff'd without opinion*, 785 F.2d 307 (6th Cir. 1986).

Plaintiff may establish a prima facie case by showing that: (1) he belongs to a racial minority; (2) he was qualified for his job; (3) he was discharged; and (4) he was treated less favorably than similarly situated employees outside of his protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335-36 n.15 (1977): *Shah v. General Electric*, 816 F.2d 264, 267-68 (6th Cir. 1987); *Beaven v. Commonwealth of Kentucky*, 783 F.2d 672, 675-76 (6th Cir. 1986). The parties focus their arguments on the fourth element of this test. Plaintiff seeks to compare himself with seven white employees whom he claims abandoned their jobs but were not terminated for such conduct. Defendant argues that none of these employees is a proper comparable because there is no evidence that these employees are similarly situated in all relevant aspects to Plaintiff. We agree. The evidence indicates that one employee identified by Plaintiff, Ruth Zink, was terminated for excessive absenteeism, not for failure to follow management instructions or job abandonment. (Doc. 53, Ex. A, Affidavit of Jim Murray at ¶ 4). Another employee, Kevin Frazee, was terminated for job abandonment because he left work after reporting to work but prior to beginning his shift. (Id. at ¶ 2). Mr. Frazee was subsequently reinstated because he established that he had left work due to sudden physical illness and had no prior performance or disciplinary problems. (Id.). There is also no evidence that he disregarded specific instructions to remain at work. Three other employees, Kevin Brown, Jason Smith, and Edward Manning, did not hold the same job or report to the same supervisor as did Plaintiff. (Hickson Dep. at 93-94, 95). The last two employees whom Plaintiff claims were permitted to leave work at the end of their eight-hour shifts without being terminated, Christian Greer and Chad Morris, are likewise, not proper comparables. Plaintiff has presented no evidence that either employee failed to complete his assigned work or, more importantly, left work after being instructed not to do so. (Hickson Dep. at 64, 71-72). Plaintiff was specifically terminated "for failure to follow management instructions" in addition to job abandonment because he left work despite being specifically instructed by

7

two supervisors to stay and complete his work. (Doc. 38, Attachment 12). The evidence indicates that none of the employees identified by Plaintiff engaged in such conduct and were permitted to retain their jobs. As such, Plaintiff has failed to present evidence that he was treated less favorably than similarly situated non-minority employees. Accordingly, we find that Plaintiff's disparate treatment claims fail as a matter of law and Defendant is entitled to summary judgment in its favor.

### IT IS THEREFORE RECOMMENDED THAT:

1) Defendant's Motion for Summary Judgment (Doc. 38) be GRANTED in accordance with the decision herein;

2) Plaintiff's Complaint be DISMISSED and this case be TERMINATED on the Court's Docket.

Date:  5/18/2006           s/Timothy S. Hogan
                           Timothy S. Hogan
                           United States Magistrate Judge

# NOTICE

Attached hereto is the Report and Recommended decision of The Honorable Timothy S. Hogan, United States Magistrate Judge, which was filed on 5/18/2006. Any party may object to the Magistrate's findings, recommendations and report within ten (10) days after being served with a copy thereof or further appeal is waived. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also* Fed. R. Civ. P. 72(b). Such parties shall file with the Clerk of Court, and serve on all Parties, the Judge and the Magistrate, a written Motion to Review which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made along with a memorandum of law setting forth the basis for such objections. (Such parties shall file with the Clerk a transcript of the specific portions of any evidentiary proceedings to which an objection is made).

In the event a party files a Motion to Review the Magistrate's Findings, Recommendations and Report, all other parties shall respond to said Motion to Review within ten (10) days after being served a copy thereof. *See* Fed. R. Civ. P. 72(b).

J:\SMITHLE\SUMJUDG\hickson.msj.wpd

1:04cv411  Doc. 55

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by (Printed Name)    C. Date of Delivery |
| 1. Article Addressed to:<br>Andre M Hickson<br>2538 Hacberry St. #116<br>Cinti, OH 45206 | D. Is delivery address different from item 1? ☐ Yes   ☐ No<br>If YES, enter delivery address below:<br><br>3. Service Type<br>☒ Certified Mail   ☐ Express Mail<br>☐ Registered   ☐ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)   ☐ Yes |
| 2. Article Number (Transfer from service label) | 7002 0860 0000 1409 2047 |

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-0835